And we'll move to our last case this morning. I think it's pronounced Gedatus v. Saul. All right, I see Mr. Schultz, and there's Ms. Hugo. So can you both hear me? Yes, your honor. We're getting an axiom from somebody. Okay, let's try to proceed and see how this goes. Mr. Schultz. May it please the court, your honors, Barry Schultz on behalf of the appellant, Alice Gedatus. In this case, the ALJ failed to follow the requirements of social security ruling 16-3P in assessing Ms. Gedatus' subjective complaints. The social security rulings are made binding on every component of the agency, including ALJs by regulation. And the commissioner has set up quite a detailed process by which an ALJ has to consider a claim in subjective complaints. And the ALJ in this case failed to do that. The ALJ says that he considered the medical and other evidence for the reasons explained in the decision. But then the ALJ just summarizes briefly, not even a fulsome summary, some of the objective evidence, and then concludes that the claimant is not disabled, and not as limited as she alleged. One of the key factors that the ALJ didn't discuss is the claimant's daily activities. This court has heard many cases concerning the claimant's daily activities. But in this case, the ALJ doesn't even mention them, at least not concerning the claimant's physical impairments, which are the only impairments that are at issue  Mr. Schultz, the regulation speaks in terms of not rejecting a claim of symptoms, here pain, solely because the available objective medical evidence does not substantiate your statement. And we have more than that going on here. The ALJ credited and gave great weight to the opinions of the state agency physicians. So the decision doesn't rest solely on the lack of objective support in her own medical records for her claims. There's that set of added opinions. Would you like to take us over the finish line here under the substantial evidence standard? Sure, because the ALJ failed to follow the mandate of ruling 16-3P ticket, once the claimant has established that she has a medically determinable impairment, that could reasonably be expected to cause the symptoms that the claimant alleges, without regard to the severity of those symptoms, the ALJ has to consider the entire record in evaluating the claimant's subjective complaint, because the claimant's subjective complaints could establish that she's disabled. And in this case, we argue they did. And the regulation, as adopted in the ruling, mandates that the ALJ consider all factors for which there's evidence in the record. That includes daily activity, that includes the type, dosage, effectiveness of medications, treatments other than medications, side effects of medications. The ALJ doesn't discuss any of those things in this decision. So the court can't tell, had the ALJ properly considered the evidence, if the ALJ would have found Ms. Gadadis' testimony more likely than not to be true. So is it that the ALJ missed a step between ruling against your client on the listings question, and before considering the RFC question? Is that the sort of focal point of your argument? Yes, I would say that's true, because before an ALJ can make a determination on residual functional capacity, the ALJ has to properly assess the claimant's subjective complaints. Because those complaints, since the claimant has impairments which could cause her symptoms, whether they cause her to be greatly limited in sitting as she testified, more limited in standing as she testified, that depends on a proper evaluation of her subjective complaints, and the ruling mandates that the ALJ consider all of those factors, all the factors for which there's evidence. If there's no evidence of limited daily activities, the ALJ would not need to discuss those. If there's no evidence of medications, the ALJ would not have to discuss those for the ruling. But since there is evidence of all of those things in this case, the ALJ is mandated to discuss those factors. And again, because if he found that the claimant was believable, he would have limited her more than he did in this case. In addition, the ALJ summary of the medical evidence is insufficient because an ALJ is not allowed just to rely on evidence that supports the decision, but must consider the evidence that favors the claimant's claim. In this case, there was Dr. Butterman and Dr. Sager, Dr. Butterman being an orthopedic treating doctor and Dr. Sager, a pain management doctor, who gave extensive in their treatment notes and their records, both indicated that the instrumentation the claimant had implanted during her fusion surgery could be one of the main sources of her back pain. And Dr. Butterman said that he thought the instrumentation was outdated, it was too large, but the ALJ doesn't discuss those opinions at all. It doesn't discuss that evidence at all. The ALJ mentions that an MRI from 2013 was normal, when in fact, even the radiologists found that it showed moderate facet hypertrophy at L4, L5. And that's the exact level in the spine that the pain management specialist said is likely the place where the claimant's pain, including her buttock and leg pain, is emanating from. So the ALJ has to consider all the significant evidence that supports a claimant's case. Otherwise, the determination of substantial evidence is really made in a vacuum and not based on full evaluation of the evidence. And then in addition- What's the strongest medical support for your client's subjective complaints? I mean, if you looked at page 547 of the administrative record, Dr. Butterman's November, 2013 examination, he says that the instrumentation in her back is palpable, just tenderness over the paraspinal muscles, 40% of lumbar flexion, that the radiologist misread the MRI that actually showed a herniated disc as well as spondylolisthesis. And then going down to, or up, I guess, page 539 of the record, Dr. Sager's report, he talks about what is her pain being from L4, L5, and that the instrumentation, again, could be causing her pain. And then in addition, as we pointed out in our brief, there's maybe eight or nine places in the record, including consistently to her doctors where Ms. Gadadis tells them that prolonged sitting as well as prolonged standing increase her pain. And she has to get up and move around. And the ALJ doesn't talk about that at all, and that it's consistent with the record. That's all I'll say at this time. Thank you, Your Honor. Thank you. Ms. Hugo. Good morning, Your Honors. Are you able to hear me? Are we still having a feedback issue? I think we're fine. Okay, thank you. May it please the court, my name is Megan Hugo, and I represent the Commissioner of Social Security. The ALJ in this case reasonably relied on the only medical opinions in the record about how Ms. Gadadis' impairments affected her ability to work. And those opinions are supported by the medical evidence in the record. There are no opinions that indicate that she was more limited than the ALJ ultimately concluded. Now, given this record, council is focused on what the ALJ did not discuss in the decision. But when we look at what is discussed in the decision, it's substantial evidence in support of the ALJ's conclusions. The ALJ, again, gave great weight to the only medical opinions. Both the state agents and doctors concluded that Ms. Gadadis could perform a reduced range of light work. The ALJ considered the objective medical evidence, including imaging studies, and fairly unremarkable findings on examinations related to her back, her knee, and her foot, and that she improved her physical therapy over the years, even though she continued to complain of being her functioning improved. The ALJ adequately explained the basis for his decision, and the court should affirm it. With respect to one of the key issues here, the sitting limitation, it's clear from the decision why the ALJ found that Ms. Gadadis could sit for six hours a day. Again, the only medical opinions say that she could sit for six hours. There are no opinions saying that she could sit for less. And the ALJ gave those opinions from Drs. Chan and Khurshidi great weight and found them consistent with the evidence. It is very clear why the ALJ found that Ms. Gadadis could sit for six hours per day. This court has said many times that when there's no medical opinion that's more limiting than what the ALJ found, there is no error. Now, of course, Ms. Gadadis said that she couldn't sit for six hours. She said she could only sit for about 30 minutes at a time, but the ALJ reasonably did not accept her subjective complaints. Now, again, we've heard a lot about what the ALJ didn't discuss, but what the ALJ put in his decision is sufficient for the court to affirm it and find that it was supported by substantial evidence, which is a low bar, as the court in Biestek recently reiterated. The ALJ considered the objective medical evidence, including the physical examination. So now, for example, she reported eight out of 10 back pain, but her doctor, Dr. Barty observed that despite those complaints, she had full strength and normal range of motion. When Ms. Gadadis complained of severe right heel pain, her doctor observed only tenderness and diagnosed a bruise. When she complained of right heel pain, her doctor, Dr. Romsek noted, that she could fully extend her knee and had full strength. The ALJ also considered the imaging studies. X-rays and MRIs of Ms. Gadadis' right knee were normal. X-rays of her right foot were normal. And the MRIs of her lumbar spine showed nothing of significance. And now, we heard some talk about Dr. Butterman interpreting the 2013 MRI, and I would like to make a couple of points about that. The ALJ characterized that MRI as normal. Well, Ms. Gadadis' own doctor called it negative. Dr. Butterman then subsequently looked at it and thought that maybe the hardware was large and it showed some instability, but yet a third doctor, Dr. Thomas, then looked at that same exact MRI and said it showed no degeneration of significance. And the state agency doctors, Drs. Chien and Korshidi also reviewed that MRI and found that Ms. Gadadis could do more strenuous work than the ALJ ultimately concluded. There was also a subsequent MRI in 2015 that showed no stenosis, no impingement, and normal disc height. So the ALJ's characterization of the lumbar spine MRIs was reasonable and not erroneous. You know, even though the regulations say that an ALJ can't discount subjective complaints based solely on objective medical evidence  isn't important and that it can't in fact even be sometimes the most important evidence. The ALJ reasonably looked at that objective medical evidence here, but didn't stop there. The ALJ considered Ms. Gadadis' treatment, including that she improved with physical therapy over the years. Her knee pain, in fact, appears to have resolved with physical therapy. And even though she continued to complain of back pain after multiple rounds of physical therapy, every time her functioning improved. And then third, of course, the ALJ gave great weight to the only medical opinions in the record, Drs. Chan and Quarshidi, who said that Ms. Gadadis could perform light work. You know, the ALJ's discussion of the evidence as a whole makes it clear why he did not accept Ms. Gadadis' complaints that she was only able to sit for 30 minutes at a time and had other disabling limitations. And the court should affirm that decision. Unless the court has further questions, I would rest on the briefs with respect to the other issues. All right, thank you very much. Mr. Schultz, you had a little bit of time left. Thank you, Your Honors. There's no legal requirement that a claimant submit a medical opinion on her behalf. If there was, the commissioner would have cited to a statute or regulation or a ruling that sets forth that requirement. If an ALJ did not have to do a subjective complaint analysis, what the commissioner used to call a credibility analysis in the absence of a favorable medical opinion, the commissioner would have said that. Instead, the commissioner issued this ruling, which is subsequent to the 96-7P, which was very similar, about seven pages, single-spaced, very detailed, mandating what an ALJ must do to evaluate subjective complaints. And the ALJ did not do this. The commissioner, in her brief, seems to almost argue by implication that the ALJ is not bound to follow the mandate of ruling, but that's not accurate. ALJ is bound to do that. In addition, the ALJ actually doesn't discuss the claimant's alleged limitations in sitting. The commissioner says it's clear why the ALJ made that finding based on the state agency opinions. Yet the ALJ limited the claimant's standing four hours a day, with no discussion of why he made that finding, but didn't find her also limited in sitting when the evidence shows she's equally limited in both sitting and standing, and she couldn't do the jobs that the vocational expert mentioned if she was limited in sitting based on the testimony of the vocational expert. So I have your honors. Thank you very much. All right, thank you very much. Our thanks to both counsel. The case is taken under advisement, and that concludes today's calendar. The court is at recess.